DECISION
 ON OBJECTIONS TO THE MAGISTRATE'S DECISION IN MANDAMUS. {¶ 1} Relator, Robert A. Weil, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied his application for permanent total disability compensation, and to enter an order granting such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that a writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
 {¶ 3} In his objections, relator argues that the commission could not rely on the report of Dr. James T. Lutz because he was biased, that Dr. Lutz failed to consider all the allowed conditions of the claim and that the commission's order does not meet the requirements of State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167; and State exrel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203. The arguments raised by relator in his objections are merely a reiteration of the arguments considered and rejected by the magistrate. Relator argues Dr. Lutz is biased because he receives a substantial part of his income from the Industrial Commission and the Bureau of Workers' Compensation; however, relator failed to move the commission to eliminate his report on the grounds of bias and for violating the commission's impartiality rules for medical examinations. Issues not raised administratively cannot be pursued in mandamus. State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78. The commission also properly evaluated the Stephenson
factors, noting that, although relator was 65 years old, he was a college graduate and had worked as a veterinarian for a number of years and could develop the necessary skills for entry level employment. The order meets the requirements of Noll.
 {¶ 4} Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own. Relator's objections to the magistrate's decision are overruled, and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
LAZARUS and WATSON, JJ., concur.
 DECISION {¶ 5} In this original action, relator, Robert A. Weil, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
 Findings of Fact {¶ 6} 1. Relator has four industrial claims arising out of his employment as a veterinarian. Claim number 95-615149 is allowed for: "open wound of wrist, right; ulnar nerve lesion, right; basilar arthritis right thumb right ulnar neuropathy." Claim number 84-6086 is allowed for: "aggravation of pre-existing degenerative disc disease with spur formation at L5-S1 and post concussive vertigo due to traumatic labyrinthitis." Claim number 87-52577 is allowed for: "right ankle laceration and puncture." Claim number 89-52438 is allowed for: "ruptured collateral ligament left thumb; post traumatic degenerative joint disease of the left wrist and left CMC joint; loss of use left thumb and ankylosis of left thumb MP joint."
 {¶ 7} 2. On September 5, 2001, relator filed an application for PTD compensation.
 {¶ 8} 3. On February 19, 2002, relator was examined, at the commission's request, by James T. Lutz, M.D. Dr. Lutz is board certified in occupational medicine. Dr. Lutz issued a four page typewritten narrative report.
 {¶ 9} Dr. Lutz also completed a "Physical Strength Rating" form on which he indicated that relator can perform "sedentary work." However, that indication is qualified by his handwritten notation: "Repetitive use of both upper extremities not to exceed 1/3 of the time."
 {¶ 10} 4. On February 6, 2002, relator was examined by commission specialist and otolaryngologist Thomas M. Schrimpf, M.D. Dr. Schrimpf issued a three page typewritten narrative report.
 {¶ 11} Dr. Schrimpf also completed a "Physical Strength Rating" form on which he indicated that relator can perform "light work."
 {¶ 12} 5. The commission requested an "Employability Assessment Report" from Teresa L. Trent, a vocational expert. The Trent report responds to the following query:
 {¶ 13} "Based on your separate consideration of reviewed medical and psycho-logical opinions regarding functional limitations which arise from allowed conditions(s), identify occupations which the claimant may reasonably be expected to perform, immediately and/or following appropriate academic remediation."
 {¶ 14} Indicating acceptance of Dr. Schrimpf's report and responding to the above query, Trent wrote: "Veterinary Anatomist," "Veterinary Parasitologist," "Veterinary Pharmacologist," "Veterinary Physiologist," "Poultry Veterinarian," and "Optometric Assistant." "Claimant has completed 18 years of schooling. Remediation is not needed."
 {¶ 15} Indicating acceptance of Dr. Lutz's report and responding to the above query, Trent wrote: "Election Clerk," "Charter," "Telephone Solicitor," "Call-out Operator," "Travel Clerk," and "Wire Transfer Clerk." "Claimant has completed 18 years of schooling. Remediation is not needed."
 {¶ 16} The Trent report further states:
 {¶ 17} "III. EFFECTS OF OTHER EMPLOYABILITY FACTORS
 {¶ 18} "1. Question: How, if at all, do the claimant's age, education, work history or other factors (physical, psychological and sociological) effect his/her ability to meet basic demands of entry-level occupations?
 {¶ 19} "Answer: Age: Age is a factor. Given the claimant's age, he may have difficulty placing himself in an employment position. Note that vocational rehabilitation services are available through the Bureau of Workers' Compensation and the Bureau of Vocational Rehabilitation Services. These services can include Job Seeking Skills Training, Job Placement, Job Development, Job Coaching, Retraining, etc. Also, the claimant is eligible for Federal Title V service.
 {¶ 20} "Education: The claimant has completed graduate school and is a Doctor of Veterinary Medicine with postgraduate surgical training. Based on the work History Profile and GED levels, he has the ability to acquire necessary skills to perform entry-level jobs.
 {¶ 21} "Work History: The claimant's work history profile is classified as requiring medium level strength. Therefore, he may have to learn various skills in order to perform certain entry-level, sedentary or possibly light duty occupations. Based on the tempera-ments associated with the Work History Profile, the claimant should have not [sic] difficulty with changing tasks often and having varied duties, doing precise work and attaining tolerances, working with people, making judgments and decisions. Further, given his work history, he has the ability to acquire skills necessary to perform jobs at the skilled level. Based on this information, the claimant should be capable of learning entry-level job demands.
 {¶ 22} "* * *
 {¶ 23} "2. Question: Does you review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry-level Sedentary or Light jobs?
 {¶ 24} "Answer: The claimant has completed graduate school and is a Doctor of Veterinary Medicine with postgraduate surgical training. Based on the Work History Profile and GED levels, he has the ability to acquire necessary skills to perform entry-level jobs.
 {¶ 25} "3. Question: Are there significant issues regarding potential employability limitation or strengths that you should call to the SHO's attention?
 {¶ 26} "Answer: As the claimant has not worked in approximately six years, he may have to readjust to employment responsibilities. This interruption of employment may limit his ability to place himself in an employment position. Not that vocational rehabilitation services are available through the Ohio Bureau of Workers' Compensation and Bureau of Vocational Rehabilitation Services."
 {¶ 27} 6. Relator moved the commission for leave to take Dr. Lutz's deposition and the commission granted the requested leave. On July 2, 2002, relator took Dr. Lutz's deposition. Dr. Lutz testified that his medical practice almost exclusively involves independent medical examinations and file reviews and that he does not typically treat patients. Dr. Lutz averages ten to 12 medical examinations per week for the Ohio Bureau of Workers' Compensation and "probably" four to eight examinations for the Industrial Commission of Ohio. He estimated that he had performed about 600 such examinations during the year prior to his deposition.
 {¶ 28} 7. Following an August 5, 2002 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
 {¶ 29} "All of the relevant medical and vocational reports on file were reviewed and considered in arriving at this decision. This order is based upon the reports of Dr. Lutz, Dr. Schrimpf and Ms. Trent.
 {¶ 30} "The application for Permanent and Total Disability has been filed in four industrial claims. All of the injuries occurred while the claimant was working as a veterinarian. The injuries occurred between 1984 and 1995. The claimant has sustained injuries to various parts of the body including both hands and wrists, the right ankle, the low back and the head. The only surgical procedure that the claimant has undergone for the allowed condition is an arthrodesis in the left thumb. The claimant returned to work after each of the injuries and last worked in May of 1996. The claimant has elected to not participate in rehabilitation services.
 {¶ 31} "Dr. Thomas Schrimpf, Otolaryngologist, examined the claimant on 2-6-02 at the request of the Industrial Commission. Dr. Schrimpf examined the claimant with regard to the post-concussive vertigo due to traumatic labyrinthitis which is allowed in claim number 84-6086. To Dr. Schrimpf the claimant complained of dizziness which varies in its intensity and duration and worsens with a head cold and certain positions. The claimant also told Dr. Schrimpf that he has occasional black-out spells and bilateral severe tinnitus. The claimant also complained of a hearing loss, worse in the left ear. The claimant told Dr. Schrimpf that he is able to drive and is able to do normal household chores including mowing the lawn. After examining the claimant and reviewing medical information on file, Dr. Schrimpf opined that the claimant has reached Maximum Medical Improvement with regard to be [sic] allowed condition. He further advised that the claimant does have symptoms of vestibular disequilibrium with supporting objective findings. Dr. Schrimpf advised, however, that the claimant is able to perform the activities of daily living without assistance except for more complex activities. On the Physical Strength Rating Form that is attached to his report, Dr. Schrimpf indicated that the claimant would be able to perform light physical work activity.
 {¶ 32} "Dr. James Lutz, Occupational Medicine, examined the claimant on 2-19-02 at the request of the Industrial Commission. To Dr. Lutz the claimant complained of intermittent but daily pain in the right wrist and thumb, the right ankle, and the low back. The claimant also complained of intermittent but less than daily pain in the left wrist. The claimant also advised that his pain symptoms are aggravated by such factors as exertional activities, walking on uneven surfaces, and changes in the weather. With regard to the activities of daily living the claimant advised the following: claimant occasionally assists his wife by cooking and doing dishes; claimant occasionally takes out the garbage; claimant does drive but rarely does any shopping; claimant feeds his cattle using an automated system; claimant goes fishing; and claimant keeps his property tidy by picking up trash and debris. The claimant further advised that he is limited in walking due to chronic, unrelated knee problems. After examining the claimant Dr. Lutz advised that the claimant has reached Maximum Medical Improvement for the allowed conditions. On the Physical Strength Rating Form that is attached to his report, Dr. Lutz indicated that the claimant would be capable of performing sedentary work. He further indicated that repetitive use of both upper extremities should not exceed 1/3 of the time.
 {¶ 33} "Claimant's counsel requested and was granted authorization to Depose Dr. Lutz. A record of the deposition is in claim number 84-6086. In the deposition Dr. Lutz reiterated that the claimant should not use his hands repetitively for more than 1/3 of the workday. Dr. Lutz further advised in his deposition that the claimant has some compromise in his ability to use the left thumb in a functional way. He further advised, however, that the claimant has some function in the left thumb with regard to the ability to hold some tools and perform some tasks. In the deposition Dr. Lutz expressed an understanding of the difference between loss of use and permanent partial impairment. Dr. Lutz further advised that he did not consider any award for loss of use of the left thumb in forming his opinion with regard to the percentage of permanent partial impairment.
 {¶ 34} "The Staff Hearing Officer finds that the claimant's condition has reached Maximum Medical Improvement. The Staff Hearing Officer further finds, based upon the reports of Dr. Lutz and Dr. Schrimpf, that the claimant retains the functional capacity to perform employment activities which are sedentary in nature.
 {¶ 35} "Ms. Theresa Trent, Certified Rehabilitation Counselor, prepared an Employability Assessment report for the Industrial Commission on 3-27-02. Ms. Trent advised that if she accepted the residual functional capacities opinion of Dr. Lutz, claimant could perform the following jobs immediately: election clerk; charter; telephone solicitor; call-out operator; travel clerk; and wire transfer clerk. She further advised that the claimant has completed 18 years of schooling and is not in need of remediation. She further advised that at the age of 65 years, claimant may have difficulty placing himself in an employment position. Ms. Trend noted, however, that vocational rehabilitation services are available through both the Bureau of Workers' Compensation and the Bureau of Vocational Rehabilitation Services. She further advised that the claimant has completed graduate school and is a doctor of Veterinary Medicine with post graduate surgical training. Ms. Trent advised that based upon the work history profile and G.E.D. levels, claimant has the ability to acquire the skills necessary to perform entry level jobs. She further advised that because the claimant's work history is classified as requiring medium level strength claimant may have to learn various skills in order to perform certain entry level sedentary or possibly light duty occupations. She further advised, however, that the claimant should not have difficulty with changing tasks often; performing varied duties; doing precise work and obtaining tolerances; working with people; and making judgments and decisions. She further advised that given the claimant's work history claimant has the ability to acquire the skills necessary to perform jobs at the skilled level. Ms. Trent characterized the claimant's work history as having involved skilled skill level and medium strength level activities. The Staff Hearing Officer notes that at the hearing claimant advised that he was a large animal veterinarian and therefore his job was performed at the heavy strength level. Ms. Trent further advised that in the claimant's work history claimant has demonstrated reasoning skills at the intellectual level, math skills at the statistics level and language at the college level. She further advised that in his work history claimant has demonstrated mostly superior aptitudes. She further advised that in his work history claimant has demonstrated the following temperaments: changing tasks often to perform varied duties; doing precise work to set tolerances; working with people; and making judgements and decisions.
 {¶ 36} "The Staff Hearing Officer finds that the claimant is 65 years of age with an undergraduate degree and a graduate degree in Veterinary Medicine. The Staff Hearing Officer further finds that the claimant has had post graduate school surgical training. The Staff Hearing Officer finds that the claimant is clearly able to read, write and perform basic math well.
 {¶ 37} "The Staff Hearing Officer finds that the claimant's age of 65 years is a moderate barrier to the claimant with regard to his ability to return to and compete in the workforce. The Staff Hearing Officer further finds, however, that age taken alone is not a factor that would prevent the claimant from working. The Staff Hearing Officer further finds that the Bureau of Vocational Rehabilitation offers return to work services for older workers which could assist the claimant in returning to work. The Staff Hearing Officer further finds that based upon the claimant's G.E.D. levels and work history claimant has the ability to develop the skills necessary to perform entry level jobs. The Staff Hearing Officer further finds, based upon claimant's history that remediation is not necessary for the claimant to be able to return to work. The Staff Hearing Officer further finds that based upon the claimant's work history claimant should not have difficulty with changing tasks often; having varied duties; doing precise work to attain tolerances; working with people; and making judgements and decisions. The Staff Hearing Officer further finds that based upon the claimant's work history claimant has the ability to acquire the skills necessary to perform jobs at the skilled level. The Staff Hearing Officer further finds that claimant's education would [be] an asset to the claimant with regard to his ability to compete in the workforce and with regard to his ability to learn the work rules, work skills, and work procedures necessary to perform some other types of employment. The Staff Hearing Officer accepts the residual functional capacities opinions of Dr. Lutz and Dr. Schrimpf and finds, based upon all of the allowed conditions, that the claimant retains the capacity to perform employment activities which are sedentary in nature. The Staff Hearing Officer further accepts the opinion of Dr. Lutz and finds that the claimant should not perform employment activities which require the claimant to use his hands repetitively for more than 1/3 of the workday. The Staff Hearing Officer further finds that the percentage of permanent partial impairment is not a factor which can be relied upon to determine Permanent Total Disability. The Staff Hearing Officer further finds that the claimant is capable of performing the following jobs immediately and consistent with the restriction of Dr. Lutz that the claimant should not use his upper extremities repetitively more than 1/3 of the day: election clerk; charter; telephone solicitor; call-out operator; travel clerk; and wire transfer clerk. The Staff Hearing Officer therefore finds that the claimant is capable of sustained remunerative employment and is not permanently and totally disabled. Claimant's application for Permanent and Total Disability, filed 9-5-01, is therefore denied." (Emphasis sic.)
 {¶ 38} 8. On December 30, 2002, relator, Robert A. Weil, filed this mandamus action.
 Conclusions of Law {¶ 39} Two issues are presented: (1) whether this court must eliminate Dr. Lutz's reports from evidentiary consideration because Dr. Lutz allegedly disclosed bias during his deposition testimony, and (2) whether the commission's order violates State ex rel. Noll v. Indus.Comm. (1991), 57 Ohio St.3d 203.
 {¶ 40} The magistrate finds: (1) Dr. Lutz's reports need not be removed from evidentiary consideration, and (2) the commission's order does not violate Noll. Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 41} According to relator in this action, Dr. Lutz's deposition testimony indicates that he "is dependent entirely upon the industrial commission and bureau for his livelihood." (Relator's brief at 16.) According to relator, that shows that Dr. Lutz failed to conduct an impartial medical examination of relator. Relator's claim of bias lacks merit.
 {¶ 42} The magistrate notes that relator puts forth his bias claim against Dr. Lutz without citation to authority including the commission's medical examination manual which addresses this very issue. The commission's medical examination manual states:
 {¶ 43} "IMPARTIALITY RULES
 {¶ 44} "Examinations are to be performed by physicians and psychologists who hold no bias with respect to the claimant, the employer or the workers' compensation system. Physicians and psychologists are excluded from performing specialist examina-tions:
 {¶ 45} "1. Who have examined or treated the claimant or reviewed the claim file for the employer, the claimant, or the Bureau of Workers' Compensation, hereafter referred to as the Bureau.
 {¶ 46} "2. Whose professional practice partner/business associate has examined or treated the claimant for the employer, the claimant, or the Bureau
 {¶ 47} "3. Who have examined the claimant or reviewed the claim file on behalf of the Industrial Commission on the same or a closely related issue.
 {¶ 48} "Any physician who does not meet the impartiality requirements should decline to examine the claimant and return the referral packet or claim file to the Commission with an explanation of the conflict. The claimant will then be rescheduled with in impartial physician or psychologist.
 {¶ 49} "Physicians or psychologists performing examinations for the Commission MAY NOT accept the examined claimant into treatment." Id. at 100.
 {¶ 50} Relator's bias claim against Dr. Lutz here must fail under the commission's "impartiality rules" as set forth in the commission's medical examination manual. That the examining physician chosen by the commission depends, in whole or in part, upon the commission or bureau for his livelihood is not a valid basis for a bias claim against the physician.
 {¶ 51} Moreover, following Dr. Lutz's deposition, relator failed to move the commission to eliminate Dr. Lutz's report on bias grounds. Relator failed to ask the commission to do what he now asks this court to do. Ordinarily, issues not raised administratively cannot be pursued in mandamus. State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78.
 {¶ 52} The magistrate now turns to the issue of Noll compliance. Pointing out that, under Ohio Adm. Code 4121-3-34(B)(3)(a)(iii), at the age of 65 years, he is considered a person "closely approaching advanced age," relator contends that the commission's order fails to properly consider his age.
 {¶ 53} In State ex rel. Moss v. Indus. Comm. (1996),75 Ohio St.3d 414, 417, the court states:
 {¶ 54} "* * * It is not enough for the commission to just acknowledge claimant's age. It must discuss age in conjunction with the other aspects of the claimant's individual profile that may lessen or magnify age's effects."
 {¶ 55} Quoting from Moss, relator suggests that the commission simply acknowledged relator's age but failed to discuss his age in conjunction with the other aspects of his profile that may lessen or magnify age's effects. The magistrate disagrees.
 {¶ 56} To begin, relator's citation to Moss does not present a full picture of the law regarding mandamus review of a commission's PTD order regarding age.
 {¶ 57} In Moss, the commission denied the PTD application of a 78-year-old applicant with an eighth grade education and an ability to read, write, and do basic math. The claimant had worked as a housekeeper. The Moss court stated:
 {¶ 58} "Our analysis of the commission's order reveals Noll
compliance. In so holding, we recognize the significant impediment that claimant's age presents to her reemployment. Workers' compensation benefits, however, were never intended to compensate claimants for simply growing old.
 {¶ 59} "Age must instead be considered on a case-by-case basis. To effectively do so, the commission must deem any presumptions about age rebuttable. Equally important, age must never be viewed in isolation. A college degree, for example, can do much to ameliorate the effects of advanced age." Id. at 416-417.
 {¶ 60} In State ex rel. Rothkegel v. Westlake (2000),88 Ohio St.3d 409, 411-412, the court states:
 {¶ 61} "Claimant also proposes that the commission's treatment of his age warrants a return to the cause for further consideration. The commission concedes that it mentioned claimant's age only in passing, but argues that the defect does not compel a return of the cause.
 {¶ 62} "Claimant relies on State ex rel. Moss v. Indus. Comm.
(1996), 75 Ohio St.3d 414, * * * in which we held:
 {¶ 63} "`[The commission has a] responsibility to affirmatively address the age factor. It is not enough for the commission just to acknowledge claimant's age. It must discuss age in conjunction with the other aspects of the claimant's individual profile that may lessen or magnify age's effects.' Id. at 417 * * *.
 {¶ 64} Since that time, we have declared that the absence of an age discussion is not necessarily a fatal flaw, nor does it, in some cases, even compel a return of the cause. In State ex rel. Blue v. Indus. Comm.
(1997), 79 Ohio St.3d 466, * * * — relied on by both the commission and the court of appeals — we wrote:
 {¶ 65} "`As another Noll flaw, claimant assails the commission's cursory mention of his age. While the commission did not "discuss" this factor, that flaw, in this instance, should not be deemed fatal. Claimant was fifty-seven when permanent total disability compensation was denied. While not a vocational asset, claimant's age is also not an insurmountable barrier to re-employment. If claimant's other vocational factors were all negative, further consideration of his age would be appropriate, since age would be outcome — determinative — the last straw that could compel a different result. All of claimant's other vocational factors are, however, positive. A claimant may not be granted permanent total disability compensation due solely to his age. Therefore, even in the absence of detailed discussion on the effects of claimant's age, the commission's explanation satisfies Noll.' Id. at 469-470 * * *.
 {¶ 66} "Claimant responds that Blue did not overrule Moss and did not, therefore, eliminate the commission's responsibility to affirmatively discuss age. This is true, but claimant misses the point. The question is not whether the commission has such a duty, but rather what happens when the commission falls short of this duty. Blue indicates that where the claimant's other vocational factors are favorable, a return of the cause is not a given.
 {¶ 67} "In this case, claimant's other vocational factors are favorable. Like the claimant in Blue, our claimant is a high school graduate. Both claimants, moreover, received extensive additional schooling in highly demanding areas — Blue as a certified electrician and our claimant as a paramedic.
 {¶ 68} "Therefore, consistent with Blue, we decline to return the cause for further consideration * * *."
 {¶ 69} In the instant order, relator's age is initially acknowledged and discussed in the context of the Trent report and thereafter as the hearing officer's findings regarding age. In the first instance, the order notes that Ms. Trent advised that, at the age of 65, relator "may have difficulty placing himself in an employment position." The commission further noted, however, that Ms. Trent stated that vocational rehabilitation services are available and that relator had completed graduate school and is a doctor of veterinary medicine with post-graduate training.
 {¶ 70} The order then addresses age in the second instance as follows:
 {¶ 71} "The Staff Hearing Officer finds that the claimant's age of 65 years is a moderate barrier to the claimant with regard to his ability to return to and compete in the workforce. The Staff Hearing Officer further finds, however, that age taken alone is not a factor that would prevent the claimant from working. The Staff Hearing Officer further finds that the Bureau of Vocational Rehabilitation offers return to work services for older workers which could assist the claimant in returning to work. The Staff Hearing Officer further finds that based upon the claimant's G.E.D. levels and work history claimant has the ability to develop the skills necessary to perform entry level jobs. The Staff Hearing Officer further finds, based upon claimant's history that remediation is not necessary for the claimant to be able to return to work. * * *"
 {¶ 72} The above-noted portions of the commission's order, as well as the context in which they appear, indicate clearly that the commission satisfied its responsibility in addressing relator's age.
 {¶ 73} As the Moss court noted, a college degree can do much to ameliorate the effects of advanced age. Here, relator successfully completed graduate school and is a doctor of veterinary medicine. Thus, relator educational accomplishments can ameliorate the effects of his age.
 {¶ 74} Relator further contends that the commission abused its discretion by failing "to address the relevance and transferability of previous work skills." (Relator's brief at 12.) Relator quotes Ohio Adm. Code 4121-3-34(B)(3)(c)(iv) and (v) as follows:
 {¶ 75} "(iv) `Transferability of skills' are skills which can be used in other work activities. Transferability will depend upon the similarity of occupational work activities that have been performed by the claimant. Skills which an individual has obtained through working at past relevant work may qualify individuals for some other type of employment.
 {¶ 76} "(v) `Previous work experience' is to include the claimant's usual occupation, other past occupations, and the skills and abilities acquired through past employment which demonstrate the type of work the claimant may be able to perform. Evidence may show that a claimant has the training or past work experience which enables the claimant to engage in sustained remunerative employment in another occupation. The relevance and transferability of previous work skills are to be addressed by the adjudicator."
 {¶ 77} A review of the commission's order indicates that the commission apparently did not find it necessary to address transferability of skills, i.e., whether skills relator used as a veterinarian will transfer to sedentary occupations that relator is physically or medically able to perform. This was not an abuse of discretion.
 {¶ 78} In State ex rel. Ewart v. Indus. Comm. (1996),76 Ohio St.3d 139, the court noted that the claimant's lack of transferable skills does not mandate a PTD award.
 {¶ 79} Here, the commission found that relator "has the ability to acquire the skills necessary to perform jobs at the skilled level." The transferability of skills used as a veterinarian is an irrelevant inquiry when the commission finds, based upon relator's considerable educational accomplishments, he has the ability to acquire skills necessary to perform jobs at the skilled level.
 {¶ 80} Moreover, Ohio Adm. Code 4121-3-34(B)(3)(c)(iv) and (v) does not require the commission to address the transferability of skills when the commission finds an ability to perform sustained remunerative employment regardless of the transferability of skills. Ewart, surpa.
 {¶ 81} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
KENNETH W. MACKE, MAGISTRATE